## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BILLY JOE ALTSTATT, as brother and Guardian of JOHNNY ALTSTATT, an incapacitated person, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-22-811-D |
| BOARD OF COUNTY COMMISSIONERS FOR OKLAHOMA COUNTY; *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## ORDER REGARDING MOTIONS TO DISMISS
## OF OKLAHOMA COUNTY AND SHERIFF JOHNSON

Before the Court are two related motions under Fed. R. Civ. P. 12(b)(1) and (b)(6): Renewed Motion to Dismiss of Defendant Board of County Commissioners of Oklahoma County [Doc. No. 41]; and Motion to Dismiss of Defendant Tommie Johnson, III [Doc. No. 58]. First, Defendant Board of County Commissioners (the "County") seeks the dismissal of Plaintiff's action on the grounds that the Amended Complaint fails to state a claim against it under 42 U.S.C. § 1983 and that supplemental state law claims are barred by the Governmental Tort Claims Act ("GTCA"), Okla. Stat. tit. 51, §§ 151-72. Plaintiff has filed a timely Response [Doc. No. 62] to the Renewed Motion, which is fully briefed. *See* Reply Br. [Doc. No. 65].

Second, Defendant Johnson is sued individually and in his official capacity as the sheriff of Oklahoma County. Because the official-capacity suit is an action against the County, Sheriff Johnson's Motion raises the same issues. He also seeks dismissal of the

individual-capacity action.  Sheriff Johnson's Motion is fully briefed.  *See* Pl.'s Resp. Br. [Doc. No. 73]; Johnson's Reply Br. [Doc. No. 80].

## Factual and Procedural Background

Plaintiff Billy Joe Altstatt sues on behalf of his ward, Johnny Altstatt ("Johnny"), alleging violations of Johnny's federal and state constitutional rights.  Plaintiff asserts claims for damages under § 1983 and *Bosh v. Cherokee County Building Authority*, 305 P.3d 994 (Okla. 2013), for personal injuries Johnny suffered on March 15, 2021, during his pretrial detention in the Oklahoma County Detention Center ("OCDC") or jail.  Plaintiff has sued thirteen defendants other than the County and Sheriff Johnson, including a public trust and twelve individuals who in 2021 were county commissioners or trustees, the administrator of OCDC, and the lead supervisor at OCDC on March 15, 2021.

Plaintiff is proceeding under the Amended Complaint [Doc. No. 35], which frames alternative theories of liability as six claims.[1]  Three § 1983 claims allege deprivations of Johnny's right to due process under the Fourteenth Amendment:  Claim 1, "Failure to Protect," alleging a violation of a "right to bodily integrity to be free from inmate-on-inmate violence" (Am. Compl. ¶ 137); Claim 3, "Inadequate Supervision," alleging a violation of a "right to adequate supervision . . . to prevent inmate-on-inmate violence" (*id.* ¶ 144); and Claim 5, "Conditions of Confinement," alleging a violation of a "right to conditions of confinement that satisfy basic constitutional requirements for housing pretrial

---

[1]  A seventh claim entitled "Individual Claims" appears to restate that each individual defendant is liable under § 1983 for his or her part in any constitutional violation.  *See* Am. Compl. at 26-27, ¶¶ 152-55.

detainees," including a "right to be free from injury." *Id*. ¶ 148.  Three *Bosh* claims allege deprivations of Johnny's right to due process under article 2, section 7 of the Oklahoma Constitution using these same labels and allegations.  *See id*. Claim 2, ¶ 141; Claim 4, ¶ 146; Claim 6, ¶ 150.

Plaintiff amended his pleading on January 11, 2023, to add Sheriff Johnson as a properly named defendant.  The amendment rendered moot a prior motion by the County to dismiss the original Complaint.  But because the underlying grounds for dismissal were unaffected, the County filed the Renewed Motion in response to the Amended Complaint. The County raises a jurisdictional challenge to the *Bosh* claims and challenges the sufficiency of the Amended Complaint to state a § 1983 claim.  Sheriff Johnson raises these same defenses, as well as issues unique to him individually, and he asserts that the official-capacity suit against him duplicates the action against the County and is unnecessary.

### Standard of Decision

"Motions to dismiss for lack of subject matter jurisdiction generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *City of Albuquerque v. U.S. Dept. of Interior*, 379 F. 3d 901, 906 (10th Cir. 2004) (internal quotation omitted).  If the motion challenges only the sufficiency of the jurisdiction allegations in the complaint, the Court confines its review of the motion to the pleadings, and the allegations in the complaint are accepted as true.  *See Peterson v. Martinez*, 707 F.3d 1197, 1205-06 (10th Cir. 2013); *Holt v. United States*, 46 F. 3d 1000, 1002 (10th Cir. 1995).  In this case, the County raises only a pleading-based jurisdictional

issue, asserting that the factual allegations of the Amended Complaint establish its statutory immunity from suit.  Thus, the Court confines its inquiry to the facts alleged by Plaintiff and assumes they are true.

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  In evaluating a complaint, the Court first disregards conclusory allegations and "next consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679; *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1248 (10th Cir. 2008).  In § 1983 cases, it is important for a complaint "to provide each individual [defendant] with fair notice as to the basis of the claims against him or her." *Robbins*, 519 F.3d at 1249-50 (emphasis omitted); *see Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009).

In limited circumstances, materials outside a complaint may be considered under Rule 12(b)(6).  *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)*; Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008).  The County has submitted as Exhibit 1 to its Motion [Doc. No. 41-1] a copy of the legal document creating the Oklahoma County Criminal Justice Authority, which is the correct name of Defendant Oklahoma County Jail

Trust.  The County asserts that this document can properly be considered because it is a public record and subject to judicial notice.  Plaintiff does not object or dispute the authenticity of the document.  Therefore, the Court elects to consider it.

### Plaintiff's Allegations

Johnny was confined in OCDC as a pretrial detainee on March 15, 2021, when he suffered personal injuries as result of inmate violence that occurred in his cell.  Plaintiff alleges that unsafe conditions existed in OCDC due to underfunding of jail operations, a shortage of detention officers, and understaffing of housing pods where cells are located. "On March 15, 2021, the jail was critically understaffed."  *See* Am. Compl. ¶ 37. Specifically, there was no detention officer assigned to the pod or the floor where Johnny was housed, and no officer was assigned to monitor video surveillance of Johnny's pod. *Id*. ¶¶ 39-41.

The Amended Complaint describes a series of events in which Johnny was physically threatened by his cellmate, placed a call for assistance, and reported the threat to an officer, but was severely beaten and sexually assaulted before any response was made. Plaintiff attributes the delayed response to the alleged fact that there was no direct or indirect supervision of inmates on the floor where Johnny's cell was located.  Plaintiff alleges that a responding officer arrived during the assault but waited for additional officers to intervene, and that Johnny was critically injured before they entered the cell.  Johnny received medical treatment at a hospital the same day.  He was treated in the intensive care unit for four days and remained hospitalized until March 29, 2023.  Johnny then returned to OCDC and was placed in the same pod as his attacker.

As pertinent here, Plaintiff alleges that each of the county commissioners in 2021 – Defendants Kevin Calvey, Carrie Blumert, and Brian Maughan – "has made public and private statements about the extreme lack of funding at the jail, and the extreme dangers at the jail created by the lack of funding," "statements admitting that the jail is dangerous," and statements "indicating their knowledge of the unconstitutional conditions related to under-staffing and under-funding at [OCDC]." *See* Am. Compl., ¶¶ 88-89, 93-94. Commissioners Calvey, Blumert, and Maughan allegedly "have each received actual notice from jail personnel and members of the Jail Trust about the dangers associated with the under-funded and under-staffed jail" and "actual notice of the unconstitutional conditions related to under-staffing and under-funding at [OCDC] for many years." *Id*. ¶¶ 91-92. Plaintiff states that local media reports about inmate-on-inmate violence at OCDC have made the problem "a matter of general public knowledge." *Id*. ¶ 96. Also, two former sheriffs, John Whetsel and P.D. Taylor, allegedly spoke to each commissioner "about the lack of funding, the resultant lack of staffing, and the dangers that it creates for inmate-on-inmate violence." *Id*. ¶¶ 97-98.

Factual allegations regarding notice to the County include: the County "has been sued multiple times over the last 15 years for inmate-on-inmate violence" (*id*. ¶ 95); a grand jury investigation in 1995 yielded a report criticizing OCDC "for lack of supervision of inmates in the pods . . . [which] is a direct result of lack of funding for detention officer positions" (*id*. ¶¶ 100-01); in 2002, the County formed the "Primary 9" committee to investigate OCDC, and the committee found OCDC "was underfunded, understaffed, and lacked appropriate supervision of inmates in the pods" (*id*. ¶¶ 103-04); from 2003 to 2007,

the County "hired Facility Group to investigate how to properly fund the jail based on their knowledge of the unconstitutional conditions at the jail" related to these issues (*id*. ¶ 105); an investigation of OCDC by the United States Department of Justice from 2006 to 2008 (which remains ongoing) resulted in a 2008 written report that found, among other things, "that underfunding, understaffing, and lack of appropriate supervision of inmates in the pods created unconstitutional conditions of confinement and raised the likelihood of inmate-on-inmate violence" (*id*. ¶ 106); after this report, the County created the "ADAC" committee to determine how "to correct issues with overcrowding, understaffing, and underfunding," and this committee again told the County that OCDC "was underfunded, understaffed, and dangerous to inmates and staff and that the risk of violence to both inmates and staff was unconstitutionally high" (*id*. ¶¶ 107-08); six times between July 2016 and April 2020, the Oklahoma State Department of Health inspected OCDC, found it was understaffed, and issued violation reports to the County. *Id*. ¶¶ 111-12. Plaintiff concludes from these facts that the County has been aware of understaffing and underfunding at OCDC "for a period of over 27 years." *Id*. ¶ 113.

## Discussion

### A.   Proper Defendant

Sheriff Johnson first asserts that Plaintiff's suit against him in his official capacity needlessly duplicates Plaintiff's action against the County. This assertion rests on the well-settled federal rule that official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit

is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)); *see Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir. 2019) ("the official-capacity claim here [against the sheriff] is effectively a claim against Tulsa County); *accord Crowson v. Washington Cnty.*, 983 F.3d 1166, 1173 n.1 (10th Cir. 2020). Oklahoma law follows a similar rule but holds that official-capacity suits are improper because government officers are protected by the GTCA. *Speight v. Presley*, 203 P.3d 173, 179 (Okla. 2008); *Pellegrino v. State ex rel. Cameron Univ.*, 63 P.3d 535, 537 (Okla. 2003). Thus, Sheriff Johnson in his official capacity is not a proper defendant under state law, and an official-capacity suit may proceed only under § 1983.

Upon consideration, the Court finds well-taken Sheriff Johnson's assertion that an official-capacity suit against him is redundant and unnecessary, given the County's presence as a party. Plaintiff's only argument in opposition to dismissal of the official-capacity claims is that he intends to pursue a theory of Sheriff Johnson's liability that is different from his claims against the County. Because a sheriff is responsible under state law for operating a county jail, Plaintiff contends unconstitutional jail conditions are a result of Sheriff Johnson's failure to adequately perform his official duties, while the County acting through its board of county commissioners failed a responsibility to provide adequate funding. *See* Pl.'s Resp. Johnson's Mot. at 3-4.

The distinction that Plaintiff proposes to make between official conduct by Sheriff Johnson and conduct by the County's board of county commissioners has a false premise. As discussed *infra*, both proposed theories would lead to the same result, namely, § 1983

liability of the County.  Plaintiff's focus on the County's liability for the conduct of its board of county commissioners is understandable given how the County frames the issues. In its Motion, the County characterizes Plaintiff's § 1983 action as a "nominal 'failure-to-fund' case" and contends the sole basis for liability of the County – as distinguished from parties directly responsible for jail operations – is the board of county commissioners' funding decisions.  *See* Cnty.'s Mot. at 1-4, 6-7; *see also* Johnson's Mot. at 11, 14, 16 (focusing on Plaintiff's alleged failure to identify a funding policy or a causal connection between funding and Johnny's injury).  But challenging the County's jail funding is not the only means by which Plaintiff may establish its liability.

Oklahoma law requires a civil action against a county to be brought by suing its board of county commissioners.  *See* Okla. Stat. tit. 19, § 4.  However, federal law governs a county's § 1983 liability under the rules of municipal liability established by *Monell* and its progeny.  The Supreme Court "held in *Monell* that a local government is liable under § 1983 for its policies that cause constitutional torts" and "[t]hese policies may be set by the government's lawmakers, 'or by those whose edicts may fairly be said to represent official policy.'"  *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784 (1997) (citation omitted, quoting *Monell*, 436 U.S. at 694).  If a sheriff has "final policymaking authority" for the county under state law for the action that allegedly caused a constitutional violation, his action creates liability of the county.  *Id*. at 785-86; *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986) (municipal liability attaches where official with policymaking authority regarding the subject matter makes a deliberate choice of unlawful action).  Under Oklahoma law, Sheriff Johnson is statutorily responsible for and so has policymaking

authority over "the county jail of his county and of all persons by law confined therein." *See* Okla. Stat. tit. 57, § 47; *see also* Okla. Stat. tit. 19, § 513; *Dodds v. Richardson*, 614 F.3d 1185, 1203 (10th Cir. 2010) ("Oklahoma law charged Defendant as sheriff with the responsibilities of running the county jail . . . .").

Plaintiff claims in the Amended Complaint that certain actions (or inactions) by both the County's board of county commissioners and the sheriff caused a violation of Johnny's Fourteenth Amendment rights and resulting injury. Notably, Plaintiff alleges that Johnny was the victim of systemic problems at OCDC that transcend any one sheriff or county officer. *See* Pl.'s Resp. Johnson's Mot. at 4.[2] The County is a proper party to defend these claims, and requiring Sheriff Johnson in his official capacity to mount a defense would be duplicative, inefficient, and potentially confusing. Therefore, the Court finds that Plaintiff's municipal-liability § 1983 claims should proceed against the County and Plaintiff's action against Sheriff Johnson in his official capacity should be dismissed.

## B.    State-Law Immunity

Both the County and Sheriff Johnson claim immunity from suit under state law because Plaintiff's *Bosh* claims are subject to the GTCA. The GTCA waives sovereign immunity from claims for damages against a county or its employees "only to the extent and in the manner prescribed in the act," which includes a list of enumerated exceptions. *See* Okla. Stat. tit. 51, §§ 152.1(B), 155; *see also Sullins v. Am. Med. Resp. of Okla., Inc.,*

---

[2] Plaintiff essentially argues that Sheriff Johnson in his official capacity (who took office in 2021) is a nominal defendant for all sheriffs who failed to take corrective action and that the joinder of former sheriffs should be permitted if the Court finds any deficiency in his pleading of an official-capacity action against Sheriff Johnson. *See* Pl.'s Resp. Johnson's Mot. at 4 n.3.

23 P.3d 259 (Okla. 2001) ("In waiving sovereign immunity, the Legislature restricted the waiver only to the extent and in the manner prescribed in the act.").  The Motions invoke two statutory exceptions, for discretionary functions and detention facilities; these exemptions preserve immunity for claims that result from the "[p]erformance of . . . any act or service which is in the discretion of the state or political subdivision or its employees" and the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility."  *Id.* § 155(5), (25).

Plaintiff counters the first exception by arguing that the County and its sheriff are constitutionally required to care for prisoners in their custody, so the discretionary-function exception does not apply.[3]  However, Plaintiff addresses the jail-operations exception of § 155(25) only in response to Sheriff Johnson's Motion.  There, Plaintiff argues that this exception protects the County but does not bar individual-capacity claims against Sheriff Johnson.  *See* Pl.'s Resp. Johnson's Mot. at 9.  As the Court understands Plaintiff's position, he concedes the jail-operations exemption applies to his *Bosh* claims against the County and Sheriff Johnson in his official capacity, but he proposes to pursue these claims through an individual-capacity action against Sheriff Johnson personally.

To this end, Plaintiff argues that the GTCA does not protect a government employee acting outside the scope of his employment and that Sheriff Johnson lost immunity from

---

[3]  Plaintiff contends the existence of constitutional duties of the County to fund OCDC and Sheriff Johnson to safekeep prisoners precludes a finding that his claims implicate discretionary functions.  *See* Pl.'s Resp. Cnty.'s Mot. at 2-4; Pl.'s Resp. Johnson's Mot. at 7-9.  Plaintiff presents no pertinent legal support for this argument.  But given GTCA's exemption of jail-related claims, a resolution of this issue is unnecessary.

suit by acting with deliberate indifference to the rights and safety of jail inmates.  Plaintiff attempts to equate the constitutional "deliberate indifference" standard under § 1983, and presumably *Bosh*, with "willful and wanton" conduct that might take Sheriff Johnson outside the scope of his office or employment.  *Id*. at 10-11.  Plaintiff provides no pertinent legal authority for this argument, and the Court is not persuaded by it.

Assuming Plaintiff has a viable *Bosh* claim, the claim would be a "constitutional tort" requiring a violation of a constitutional right.  *See Barrios v. Haskell Cnty. Pub. Facilities Auth.*, 432 P.3d 233, 240-41 (Okla. 2018).[4]  The due-process guarantee of article 2, § 7 of the Oklahoma Constitution – like the Due Process Clause of the Fourteenth Amendment – has procedural and substantive components.  "The substantive component . . . bars certain governmental action despite the adequacy of procedural protections provided."  *Braitsch v. City of Tulsa*, 436 P.3d 14, 19 (Okla. 2018); *accord Okla. Coal. for Reprod. Just. v. Cline*, 441 P.3d 1145, 1153 (Okla. 2019).  Plaintiff implicitly recognizes the requirement of governmental action by alleging in support of his state-law claims that the "Board of County Commissioners . . . through its employees" violated Johnny's constitutional rights and *Bosh* provides a right of action "for which the Board is liable to the Plaintiff."  *See* Am. Compl. ¶¶ 142, 146, 150.  Also, to satisfy the need for state action,

---

[4]  In *Barrios*, the Oklahoma Supreme Court declined to extend *Bosh* to an inmate's claim for denial of medical care because it found "the GTCA's specific prohibition against tort suits arising out of the 'operation or maintenance of any prison, jail or correctional facility' is a legislative determination to which we must now defer."  *Id*. at 240.

Plaintiff alleges that Sheriff Johnson was at all material times "acting under color of law." *Id*. at ¶¶ 20, 23.[5]

Plaintiff does not explain how Sheriff Johnson could both act outside the scope of his office and act under color of law, in order to deprive Johnny of a due-process right and commit a constitutional tort. The Court finds that Plaintiff's theory of Sheriff Johnson's individual liability is incongruent with the nature of a constitutional tort, which necessarily requires that he was acting within the scope of his office as a governmental actor. The Court thus rejects Plaintiff's position that under the alleged facts of this case he may bring a *Bosh* claim against Sheriff Johnson individually that is not barred by the GTCA.

In summary, the Court finds that Plaintiff's state-law claims under *Bosh* are barred by GTCA's immunity for claims resulting from jail operations and that these claims should be dismissed without prejudice.[6]

## C.    Plaintiff's § 1983 Claims Against the County

To establish the County's liability under § 1983, Plaintiff must show the existence of a municipal policy or custom and a direct causal link between the policy or custom and a violation of Johnny's constitutional rights. *See Waller v. City of Denver*, 932 F.3d 1277, 1284-85 (10th Cir. 2019). Plaintiff must also show the requisite state of mind, which is

---

[5]   "The statutory requirement [under § 1983] of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982).

[6]   Because immunity from suit is a jurisdictional defense under state law, the dismissal must be without prejudice to refiling, even if refiling would be futile. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims") (emphasis in original).

deliberate indifference.  *See Burke v. Regalado*, 935 F.3d 960, 998-99 (10th Cir. 2019); *see also Crowson v. Washington Cnty.*, 983 F.3d 1166, 1184 (10th Cir. 2020) ("To state a claim against a municipal entity in this context, plaintiffs must allege facts showing: (1) an official policy or custom, (2) causation, and (3) deliberate indifference."); *accord Estate of Burgaz ex rel. Zommer v. Bd. of Cnty. Comm'rs*, 30 F.4th 1181, 1189 (10th Cir. 2022).

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotations omitted); *accord Waller*, 932 F.3d at 1283.

The County first asserts that the Amended Complaint "fails to establish the existence of an underlying constitutional violation, which is a *Monell* prerequisite."  *See* Cnty.'s Mot. at 14.  Addressing two constitutional rights identified in the Amended Complaint, the County argues that Plaintiff must show that county employees either failed to protect Johnny from a substantial risk of serious harm or maintained jail conditions that posed a substantial risk to Johnny's safety.  *Id*. at 15-18, 19-20.  Sheriff Johnson expressly argues that "Plaintiff has failed to identify any underlying constitutional violation by a subordinate" employee.  *See* Johnson's Reply Br. at 15.

To the extent these arguments would require Plaintiff to identify conduct by a jail employee that violated a constitutional right, the Court finds them to be inconsistent with Tenth Circuit precedents holding that "even where the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1033-34 (10th Cir. 2020) (quoting *Garcia v. Salt Lake City*, 768 F.3d 303, 310 (10th Cir. 1985)).   In some situations, municipal "policies may be unconstitutional precisely because they fail to ensure that any single officer is positioned to prevent the constitutional violation."   *Crowson*, 983 F.3d at 1191; *see Burgaz*, 30 F.4th at 1190.   The Tenth Circuit has recognized allegations that "the number of correctional officers overseeing inmates is so low as to constitute a substantial risk to inmate safety" may state a constitutional claim. *See Savage v. Fallin*, 663 F. App'x 588, 592-93 (10th Cir. 2016) (unpublished) (citing *Ramos v. Lamm*, 639 F.2d 559, 573 (10th Cir. 1980)).[7]

In the Amended Complaint, Plaintiff alleges that the County had an established custom of failing to adequately fund jail operations and staff OCDC with enough detention officers to meet institutional needs of supervision and control of inmates.   Regarding causation, Plaintiff alleges that the lack of detention officers directly resulted in Johnny's injury by another inmate; that is, understaffing allegedly caused Johnny's report of a threat to go unaddressed, his housing pod to be unmanned, his cellmate's attack to continue

---

[7]   Unpublished opinion cited pursuant to Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

unabated, and intervention by officers to be delayed.  Plaintiff also alleges that the County was deliberately indifferent to the likelihood the staffing deficiency would result in inmate-on-inmate violence and serious injury to victims.  Deliberate indifference can be inferred from allegations showing repeated notices to the County of an understaffing problem and acknowledgement of the problem by numerous county leaders, but a failure to correct it despite multiple lawsuits, investigations, and reports from various committees, agencies, and local news media.  "Although [the Court is] not sure whether [Plaintiff] can prove each of the [three] elements at trial or even survive summary judgment, [he] allege[s] sufficient facts supporting each element for [his] claim to proceed past the motion-to-dismiss stage." *Quintana*, 973 F.3d at 1034.

Therefore, the Court finds that the Amended Complaint contains sufficient factual allegations to state a plausible § 1983 claim against the County.[8]

## D.    Plaintiff's Individual-Liability § 1983 Claims

Plaintiff's § 1983 claims against Sheriff Johnson individually require a theory of supervisory liability.  Under this theory, Plaintiff "must show an 'affirmative link' between the supervisor and the constitutional violation." *Burke*, 935 F.3d at 997 (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014)).  For supervisory liability, Sheriff Johnson must "have promulgated, created, implemented[,] or possessed responsibility for

---

[8]  The Court's considers what Plaintiff presents as three § 1983 claims – failure to protect Johnny from violence, inadequate supervision, and unconstitutional safety conditions – to be alternate theories for a claim regarding Johnny's injury.  Because the movants do not object to any multiplicity of claims, the Court does not address this issue.  *See Burgaz*, 30 F.4th at 1190 n.7 ("We do not opine on the merits of the hypothetical argument.").

the continued operation of a policy" that resulted in a violation of [Johnny's] constitutional rights." *Id*. at 998 (internal quotation omitted).  Like municipal liability, Plaintiff must also show "a causal relationship between the policy or custom and the underlying violation" and "deliberate indifference." *Id*. at 999.

In response to Sheriff Johnson's Motion, Plaintiff makes only general arguments, supported by broad references to the Amended Complaint. *See* Pl.'s Resp. Johnson's Mot. at 6-7.[9]  Plaintiff asserts that Sheriff Johnson was legally responsible for OCDC, knew of "unconstitutional conditions [that] included housing nonviolent pretrial detainees in unsupervised locations with unrestrained inmates known to harbor a propensity" for violence, and "continued to promulgate the practice of understaffing and underfunding the OCDC." *Id*. at 6, 12.

The Court finds that Plaintiff's suggestion of an unconstitutional housing policy lacks factual support; it appears only as a conclusory allegation in the Amended Complaint. *See* Am. Compl. ¶¶ 137, 142.  As to underfunding and understaffing, Plaintiff focuses on Sheriff Johnson's "failure correct or change [a] long-standing practice" that perpetuated dangerous conditions at OCDC.  *See* Pl.'s Resp. Johnson's Mot. at 6-7.  Plaintiff's only factual support for his argument that Sheriff Johnson failed to respond appropriately to unsafe conditions refers to their "continued existence over the past 27 years" and they lasted "without being corrected for all those years." *Id*. at 12-13.

---

[9]  Many citations refer to conclusory allegations regarding a collective group of individual defendants.  *See*, *e.g.*, Am. Compl. §§ 90, 99.

Upon consideration, the Court finds that Plaintiff fails to connect Sheriff Johnson in any meaningful way to the alleged historical understaffing at OCDC, and fails to identify any action (or inaction) on Sheriff Johnson's part during his two months in office before Johnny's injury that may have caused the violation of Johnny's rights.  At this point, the Court finds that the Amended Complaint contains insufficient factual allegations to state a § 1983 claim against Sheriff Johnson in his individual capacity.[10]

## Conclusion

For these reasons, the Court finds that Sheriff Johnson is entitled to the dismissal of Plaintiff's § 1983 action against him and that both the County and Sheriff Johnson are entitled to the dismissal of Plaintiff's state-law claims under *Bosh*, but that the Amended Complaint states plausible § 1983 claims against the County.

**IT IS THEREFORE ORDERED** that the Renewed Motion to Dismiss of Defendant Board of County Commissioners of Oklahoma County [Doc. No. 41] is **GRANTED** in part and **DENIED** in part and the Motion to Dismiss of Defendant Tommie Johnson, III [Doc. No. 58] is **GRANTED**.  Plaintiff's § 1983 claims against Sheriff Johnson and Plaintiff's state-law claims against both movants are **DISMISSED** without prejudice.

---

[10]  Because this deficiency could conceivably be cured by further amendment of Plaintiff's pleading, the dismissal should be without prejudice.  A deadline for motions to amend pleadings and join additional parties will be set in a scheduling order entered under Fed. R. Civ. P. 16(b).

**IT IS SO ORDERED** this 19th day of September, 2023.

TIMOTHY D. DeGIUSTI
Chief United States District Judge