IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

BILLY JOE ALTSTATT, as brother and )
Guardian of JOHNNY ALTSTATT, an )
incapacitated person, )
)
      Plaintiff, )
)
v. )   Case No. CIV-22-811-D
)
BOARD OF COUNTY COMMISSIONERS )
FOR OKLAHOMA COUNTY; *et al.*, )
)
      Defendants. )

**ORDER REGARDING MOTION TO DISMISS
OF OKLAHOMA COUNTY CRIMINAL JUSTICE AUTHORITY**

Before the Court is the Motion to Dismiss by Proposed Defendant Oklahoma County Criminal Justice Authority [Doc. No. 53]. The movant was sued under the name "Oklahoma County Jail Trust" but moves in its proper name to dismiss the case. Plaintiff concedes the correct name of the trust is Oklahoma County Criminal Justice Authority ("OCCJA"). *See* Pl.'s Resp. Br. [Doc. No. 64] at 1. Thus, the Court will use the correct name in this Order. The Motion is fully briefed and ripe for decision.[1]

OCCJA seeks a dismissal under Fed. R. Civ. P. 12(b)(1) and (b)(6) on multiple grounds: 1) the trust lacks the legal capacity to be sued; 2) the Amended Complaint fails to state a claim against it under 42 U.S.C. § 1983;[2] 3) the trust is immune from suit on

---

[1] In his Response, Plaintiff improperly purports to incorporate another brief by reference. *See* Pl.'s Resp. Br. at 3 n.1. Such incorporation is not authorized by Fed. R. Civ. P. 10(c) and does not comply with LCvR7.1(e), and thus this reference is disregarded. No optional reply brief was filed.

[2] Although OCCJA refers in argument to the Complaint, Plaintiff's operative pleading is the Amended Complaint.

Plaintiff's state-law claims under the Governmental Tort Claims Act ("GTCA"), Okla. Stat. tit. 51, § 151 *et seq*.; 4) Plaintiff failed to give notice of a tort claim as required by the GTCA; and 5) Plaintiff failed to exhaust administrative remedies for his § 1983 claim as required by 42 U.S.C. § 1997e(a).

## Factual and Procedural Background

Plaintiff Billy Joe Altstatt sues on behalf of his ward, Johnny Altstatt ("Johnny"), alleging violations of Johnny's federal and state constitutional rights. Plaintiff asserts claims for damages under § 1983 and *Bosh v. Cherokee County Building Authority*, 305 P.3d 994 (Okla. 2013), for personal injuries Johnny suffered on March 15, 2021, during his pretrial detention in the Oklahoma County Detention Center ("OCDC") or jail. Plaintiff has sued fourteen defendants other than OCCJA, including Oklahoma County, its sheriff, and twelve individuals who were county commissioners or trustees, the administrator of OCDC, and the lead supervisor at OCDC on March 15, 2021.

Plaintiff is proceeding under the Amended Complaint [Doc. No. 35], which frames alternative theories of liability as six claims.[3] Three § 1983 claims allege deprivations of Johnny's right to due process under the Fourteenth Amendment: Claim 1, "Failure to Protect," alleging a violation of a "right to bodily integrity to be free from inmate-on-inmate violence" (Am. Compl. ¶ 137); Claim 3, "Inadequate Supervision," alleging a violation of a "right to adequate supervision . . . to prevent inmate-on-inmate violence" (*id*.

---

[3] A seventh claim entitled "Individual Claims" appears to restate that each individual defendant is liable under § 1983 for his or her part in any constitutional violation. *See* Am. Compl. at 26-27, ¶¶ 152-55.

2

¶ 144); and Claim 5, "Conditions of Confinement," alleging a violation of a "right to conditions of confinement that satisfy basic constitutional requirements for housing pretrial detainees," including a "right to be free from injury." *Id*. ¶ 148. Three *Bosh* claims allege deprivations of Johnny's right to due process under article 2, section 7 of the Oklahoma Constitution using these same labels and allegations. *See id*. Claim 2, ¶ 141; Claim 4, ¶ 146; Claim 6, ¶ 150.

Plaintiff amended his pleading on January 11, 2023, and OCCJA filed the instant Motion in response to the Amended Complaint. As stated above, the Motion raises a jurisdictional challenge to the *Bosh* claims and a procedural defense to the federal claims, and challenges the sufficiency of the Amended Complaint to state a § 1983 claim.

**Standard of Decision**

"Motions to dismiss for lack of subject matter jurisdiction generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *City of Albuquerque v. U.S. Dept. of Interior*, 379 F. 3d 901, 906 (10th Cir. 2004) (internal quotation omitted). If the motion challenges only the sufficiency of the jurisdiction allegations in the complaint, the Court confines its review of the motion to the pleadings, and the allegations in the complaint are accepted as true. *See Peterson v. Martinez*, 707 F.3d 1197, 1205-06 (10th Cir. 2013); *Holt v. United States*, 46 F. 3d 1000, 1002 (10th Cir. 1995). In this case, OCCJA raises only a pleading-based jurisdictional issue, asserting that the allegations of the Amended Complaint establish its statutory immunity from suit. Thus, the Court relies for its ruling on the facts alleged by Plaintiff.

3

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating a complaint, the Court first disregards conclusory allegations and "next consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679; *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1248 (10th Cir. 2008).

As part of its Motion, OCCJA invokes its status as a public trust created under the Oklahoma Statutes. *See* OCCJA's Mot. at 2 (citing Okla. Stat. tit. 60, § 176). A copy of the trust indenture has been submitted by Defendant Board of County Commissioners of Oklahoma County [Doc. No. 41-1], and the Court has determined that this document may properly be considered under Rule 12(b)(6). *See* 9/19/23 Order [Doc. No. 91] at 4-5. Plaintiff relies on provisions of the trust indenture in response to OCCJA's Motion. *See* Pl.'s Resp. Br. at 3. Thus, the Court elects to consider this material in ruling on the Motion.

## Plaintiff's Allegations

Johnny was confined in OCDC as a pretrial detainee on March 15, 2021, when he suffered serious personal injuries as result of inmate violence that occurred in his cell. Plaintiff alleges that unsafe conditions existed in OCDC due to underfunding of jail

operations, a shortage of detention officers, and understaffing of housing pods where cells are located. "On March 15, 2021, the jail was critically understaffed." *See* Am. Compl. ¶ 37. Specifically, there was no detention officer assigned to the pod or the floor where Johnny was housed, and no officer was assigned to monitor video surveillance of Johnny's pod. *Id*. ¶¶ 39-41.

The Amended Complaint describes a series of events in which Johnny was physically threatened by his cellmate, placed a call for assistance, and reported the threat to an officer, but was severely beaten and sexually assaulted before any response was made. Plaintiff attributes the delayed response to the alleged fact that there was no direct or indirect supervision of inmates on the floor where Johnny's cell was located. Plaintiff alleges that a responding officer arrived during the assault but waited for additional officers to intervene, and that Johnny was critically injured before they entered the cell. Johnny received medical treatment at a hospital the same day. He was treated in the intensive care unit for four days and remained hospitalized until March 29, 2023. Johnny then returned to OCDC and was placed in the same pod as his attacker.

As pertinent here, Plaintiff alleges that the trustees of OCCJA "have each made public and private statements admitting their knowledge of the dangers created to inmates caused by underfunding and understaffing" and "public admissions indicating their knowledge of the unconstitutional conditions related to under-staffing and under-funding at [OCDC]." *See* Am. Compl., ¶¶ 90, 99.[4] The trustees allegedly notified the county

---

[4] These statements were allegedly made by "Defendants six (6) through fifteen (15)," a group which is comprised of all individual defendants other than the county commissioners and the sheriff.

commissioners at some point "about the dangers associated with the under-funded and under-staffed jail." *Id.* ¶ 91. Plaintiff states that local media reports about inmate-on-inmate violence at OCDC have made the problem "a matter of general public knowledge." *Id.* ¶ 96.

The trust indenture indicates that OCCJA was created in May 2019 under the Oklahoma Public Trust Act, Okla. Stat. tit. 60, § 176 *et seq.*, for the use and benefit of Oklahoma County and for the purpose, *inter alia*, of operating and managing its jail and detention facilities, except certain expressly excluded facilities. *See* Trust Indenture, art. IV, § 1. At that time, the sheriff of Oklahoma County was P.D. Taylor, and he or his designee was a trustee. *See id.* art. VII, § 1. During his tenure, Sheriff Taylor allegedly spoke to the county commissioners and in open meetings "about the lack of funding [for OCDC], the resultant lack of staffing, and the dangers that it creates for inmate-on-inmate violence." *Id.* ¶ 98.[5]

In February 2021, the administrator of OCDC hired Ryan Correctional Services to investigate how to improve jail conditions. Ryan Correctional Services provided a report that included findings "that the present level of staffing was insufficient for a safe and secure jail," that it was "impossible to effectively manage the inmate population when [the jail is] so short staffed," and the jail staff "expressed significant concerns" about a lack of safety. *Id.* ¶¶ 115, 119-20. The trustees of OCCJA were informed of these findings and discussed them in open meetings. *Id.* ¶ 121.

---

[5] Sheriff Taylor was succeeded in office by Tommie Johnson, III in January 2021.

## Discussion

### A.  Proper Defendant

OCCJA first asserts that Plaintiff's suit against it is improper because a public trust created under Oklahoma law lacks the capacity to be sued. OCCJA has raised this same issue with the same supporting arguments in other cases. This Court has rejected OCCJA's position and has determined it is a proper defendant in civil rights cases arising from its operation of OCDC. *See Bond v. Okla. Cnty. Crim. Just. Auth.*, Case No. CIV-23-05-D, 2023 WL 2878772, *2-3 (W.D. Okla. Apr. 10, 2023); *Cooper v. Okla. Cnty. Crim. Just. Auth.*, Case No. CIV-22-1027-D, 2023 WL 3940559, *2-3 (W.D. Okla. May 10, 2023) (R&R adopted June 9, 2023, 2023 WL 3938468). The Court adheres to this ruling here.

### B.  State-Law Immunity

OCCJA claims immunity from suit under state law because Plaintiff's *Bosh* claims are subject to the GTCA. The GTCA waives sovereign immunity from claims for damages against a political subdivision "only to the extent and in the manner prescribed in the act," which includes a list of enumerated exceptions. *See* Okla. Stat. tit. 51, §§ 152.1(B), 155; *see also Sullins v. Am. Med. Resp. of Okla., Inc.,* 23 P.3d 259 (Okla. 2001) ("In waiving sovereign immunity, the Legislature restricted the waiver only to the extent and in the manner prescribed in the act."). The Motion invokes a statutory exception that preserves sovereign immunity for claims resulting from the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility." *Id.* § 155(25). The Court has previously ruled on motions to dismiss filed by other defendants in this case that the jail-operations exception of § 155(25) applies to Plaintiff's *Bosh* claims and bars him from

7

pursuing these claims. *See* 9/19/23 Order at 13. Plaintiff makes no argument in response to OCCJA's Motion that would alter this conclusion. Therefore, the Court finds that OCCJA is entitled to a dismissal without prejudice of Plaintiff's state-law claims.[6]

## C. Procedural Defense to § 1983 Claims

OCCJA raises an alleged procedural defect in Plaintiff's § 1983 claims, that is, a failure to satisfy the requirement of § 1997e(a) that a prisoner must exhaust administrative remedies before filing a civil action regarding prison conditions. Plaintiff correctly responds that this requirement does not apply to a former prisoner who was not in custody when the action was filed. *See Norton v. City of Marietta*, 432 F.3d 1145, 1150-51(10th Cir. 2005). Plaintiff was not required to show administrative exhaustion.

## D. Sufficiency of Plaintiff's § 1983 Claims

Plaintiff claims under § 1983 that OCCJA's actions or inactions regarding funding and staffing of OCDC caused a violation of Johnny's Fourteenth Amendment rights and resulting injury. Plaintiff identifies two constitutional rights allegedly violated: Johnny's right to adequate protection "from violence at the hands of other prisoners," *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); and Johnny's right to humane conditions of confinement, including reasonable safety. *See Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). Plaintiff also relies in his pleading on Tenth Circuit authority holding allegations that "the number of correctional officers overseeing inmates is so low as to constitute a

---

[6] Because immunity from suit is a jurisdictional defense under state law, the dismissal must be without prejudice to refiling. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006). Considering this disposition, the Court does not reach any other issues raised by OCCJA in defense of Plaintiff's *Bosh* claims.

8

substantial risk to inmate safety" may support a constitutional claim. *Savage v. Fallin*, 663 F. App'x 588, 592-93 (10th Cir. 2016) (unpublished) (citing *Ramos v. Lamm*, 639 F.2d 559, 573 (10th Cir. 1980)); *see* Am. Compl. ¶ 70 (citing *Ramos*).[7]

To establish OCCJA's liability under § 1983, Plaintiff must satisfy the rules of municipal liability established by *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny. The Supreme Court "held in *Monell* that a local government is liable under § 1983 for its policies that cause constitutional torts" and "[t]hese policies may be set by the government's lawmakers, 'or by those whose edicts may fairly be said to represent official policy.'" *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784 (1997) (citation omitted, quoting *Monell*, 436 U.S. at 694). Under Oklahoma law, a public trust established for the use and benefit of a county "may lawfully exercise the powers of [the county] in order to accomplish the purpose of the trust." *Tulsa Cnty. Deputy Sheriff's Fraternal Ord. of Police v. Bd. of Cnty. Comm'rs*, 995 P.2d 1124, 1131 (Okla. 2000). Here, OCCJA allegedly had operational authority over OCDC.

To prevail in a § 1983 claim against OCCJA, Plaintiff must show the existence of a municipal policy or custom and a direct causal link between the policy or custom and a violation of Johnny's constitutional rights. *See Waller v. City of Denver*, 932 F.3d 1277, 1284-85 (10th Cir. 2019). Plaintiff must also show the requisite state of mind, which is deliberate indifference. *See Burke v. Regalado*, 935 F.3d 960, 998-99 (10th Cir. 2019); *see also Crowson v. Washington Cnty.*, 983 F.3d 1166, 1184 (10th Cir. 2020) ("To state a claim

---

[7] Unpublished opinion cited pursuant to Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

against a municipal entity in this context, plaintiffs must allege facts showing: (1) an official policy or custom, (2) causation, and (3) deliberate indifference."); *accord Estate of Burgaz ex rel. Zommer v. Bd. of Cnty. Comm'rs*, 30 F.4th 1181, 1189 (10th Cir. 2022).

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotations omitted); *accord Waller*, 932 F.3d at 1283.

The Amended Complaint states factual allegations from which a reasonable inference can be drawn that OCCJA maintained an established custom of failing to adequately staff OCDC with enough detention officers to meet institutional needs of supervision and control of inmates. Regarding causation, Plaintiff alleges that the lack of detention officers directly resulted in Johnny's injury by another inmate; that is, understaffing allegedly caused Johnny's report of a threat to go unaddressed, his housing pod to be unmanned, his cellmate's attack to continue unabated, and intervention by officers to be delayed. Plaintiff also alleges that OCCJA was deliberately indifferent to the likelihood the staffing deficiency would result in inmate-on-inmate violence and serious injury to victims. Deliberate indifference can be inferred from allegations showing knowledge by OCCJA and its trustees of a historical understaffing problem and the danger

of serious injury to inmates it created, and a failure to correct this systemic deficiency. "Although [the Court is] not sure whether [Plaintiff] can prove each of the [three] elements at trial or even survive summary judgment, [he] allege[s] sufficient facts supporting each element for [his] claim to proceed past the motion-to-dismiss stage." *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020).

Therefore, the Court finds that the Amended Complaint contains sufficient factual allegations to state a plausible § 1983 claims against OCCJA.

## Conclusion

For these reasons, the Court finds that OCCJA is entitled to the dismissal of Plaintiff's state-law claims under *Bosh* but that the Amended Complaint states plausible § 1983 claims against OCCJA.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss by Defendant Oklahoma County Criminal Justice Authority [Doc. No. 53] is **GRANTED** in part and **DENIED** in part.  Plaintiff's state-law claims (Claim Nos. 2, 4 and 6) against OCCJA, which was sued as the Oklahoma County Jail Trust, are **DISMISSED** without prejudice.

**IT IS SO ORDERED** this 20th day of September, 2023.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge