IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BILLY JOE ALTSTATT, as brother and Guardian of JOHNNY ALTSTATT, an incapacitated person,<br><br>    Plaintiff,<br><br>v.<br><br>BOARD OF COUNTY COMMISSIONERS FOR OKLAHOMA COUNTY; *et al.*,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. CIV-22-811-D<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER REGARDING MOTION TO DISMISS**
**OF OKLAHOMA COUNTY COMMISSIONERS**

Before the Court is the Renewed Motion to Dismiss of Defendants Carrie Blumert, Kevin Calvey, and Brian Maughan [Doc. No. 42] under Fed. R. Civ. P. 12(b)(1) and (b)(6). The movants are individuals who were the elected county commissioners for Oklahoma County in 2021 when the underlying events of this case occurred (the "Commissioners"). They seek the dismissal of Plaintiff's action on the grounds that he lacks standing to sue them, they are immune from suit, and the Amended Complaint fails to state a claim against them under 42 U.S.C. § 1983. Plaintiff has filed a timely Response [Doc. No. 61] in opposition to the Renewed Motion, which is fully briefed. *See* Reply Br. [Doc. No. 66].[1]

---

[1] In their opening brief, the Commissioners purport to incorporate parts of a brief filed by Defendant Board of County Commissioners. *See* Comm'rs Br. at 21. Plaintiff responds in kind. *See* Pl.'s Resp. Br. at 14. This briefing strategy does not comply with LCvR7.1(e) and is disregarded.

**Factual and Procedural Background**

Plaintiff Billy Joe Altstatt brings this action on behalf of his ward, Johnny Altstatt ("Johnny"), for alleged violations of Johnny's federal and state constitutional rights. Plaintiff asserts claims for damages under § 1983 and *Bosh v. Cherokee County Building Authority*, 305 P.3d 994 (Okla. 2013), for personal injuries that Johnny suffered on March 15, 2021, during his confinement in the Oklahoma County Detention Center ("OCDC") or jail. Plaintiff has sued fifteen defendants, including the Board of County Commissioners of Oklahoma County and the Oklahoma County Jail Trust (properly named, Oklahoma County Criminal Justice Authority). Plaintiff appears to be suing the Commissioners in their individual capacities for their personal involvement in allegedly failing to provide adequate funding and staffing for OCDC.[2]

Plaintiff is proceeding under the Amended Complaint [Doc. No. 35], which frames alternative theories of liability as seven claims. Three § 1983 claims allege deprivations of Altstatt's right to due process under the Fourteenth Amendment: Claim 1, "Failure to Protect," alleging a violation of a "right to bodily integrity to be free from inmate-on-inmate violence" (Am. Compl. ¶ 137); Claim 3, "Inadequate Supervision," alleging a violation of a "right to adequate supervision . . . to prevent inmate-on-inmate violence" (*id*.

---

[2] In the caption of his pleadings, Plaintiff identifies each commissioner as a defendant "in his individual capacity, as an Oklahoma County Commissioner, and a member of the Oklahoma County Jail Trust." Plaintiff does not state in the allegations of his pleadings the capacity in which the Commissioners are sued. The Commissioners move for dismissal in their individual capacities. *See* Comm'rs Mot. at 1. To the extent Plaintiff intended to sue the Commissioners in their official capacities, the Court would find an official-capacity suit to be duplicative and unnecessary. *See* 9/19/23 Order [Doc. No. 91] at 7-10 (dismissing official-capacity action against the sheriff).

¶ 144); and Claim 5, "Conditions of Confinement," alleging a violation of a "right to conditions of confinement that satisfy basic constitutional requirements for housing pretrial detainees," including a "right to be free from injury." *Id*. ¶ 148. Three *Bosh* claims allege deprivations of Altstatt's right to due process under article 2, section 7 of the Oklahoma Constitution using these same labels and allegations. *See id*. Claim 2, ¶ 141; Claim 4, ¶ 146; Claim 6, ¶ 150. A seventh claim entitled "Individual Claims" appears to restate that each individual defendant is liable under § 1983 for his or her part in any constitutional violation. *Id*. ¶¶ 152-55.

Plaintiff's amendment of his pleading on January 11, 2023, rendered moot a prior motion by the Commissioners to dismiss the original Complaint. Because the amendment did not affect the asserted grounds for dismissal, the Commissioners filed the Renewed Motion in response to the Amended Complaint. As previously stated, the Commissioners raise jurisdictional issues and challenge the sufficiency of the Amended Complaint to state a § 1983 claim. There are two jurisdictional issues: whether Plaintiff's allegations are sufficient to satisfy the requirements for standing under Article III of the Constitution; and whether the *Bosh* claims are barred by sovereign immunity under the Governmental Tort Claims Act ("GTCA"), Okla. Stat. tit. 51, §§ 151-72. The Commissioners raise an additional legal issue that is not jurisdictional: whether Plaintiff's § 1983 claims against the Commissioners are barred by absolute legislative immunity.[3]

---

[3] Absolute immunity from suit under § 1983 is a judicial doctrine derived from common-law immunities under tort law. *See Rehberg v. Paulk*, 566 U.S. 356, 362-63 (2012). It is a defense properly raised under Rule 12(b)(6). *See Montoya v. Vigil*, 898 F.3d 1056, 1065 (10th Cir. 2018).

## Standards of Decision

### A.     Rule 12(b)(1) – Subject Matter Jurisdiction

Article III standing is a jurisdictional requirement for a plaintiff to plead and prove, and a lack of standing may be challenged by a motion under Rule 12(b)(1). *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998). Similarly, Oklahoma law treats immunity from suit under GTCA as a jurisdictional matter. *See Chambers v. City of Ada*, 894 P.2d 1068, 1074 (Okla. 1995).

"Motions to dismiss for lack of subject matter jurisdiction generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *City of Albuquerque v. U.S. Dept. of Interior*, 379 F. 3d 901, 906 (10th Cir. 2004) (internal quotation omitted). If the motion challenges only the sufficiency of the jurisdictional allegations in the complaint, the Court confines its review to the pleadings and accepts the allegations in the complaint as true. *See Peterson v. Martinez*, 707 F.3d 1197, 1205-06 (10th Cir. 2013); *Holt v. United States*, 46 F. 3d 1000, 1002 (10th Cir. 1995). In this case, the Commissioners raise only pleading-based jurisdictional issues, and the Court confines its inquiry to the facts stated by Plaintiff.

### B.     Rule 12(b)(6) – Failure to State a Claim

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

4

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating a complaint, the Court first disregards conclusory allegations and "next consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679; *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1248 (10th Cir. 2008). In § 1983 cases, it is particularly important for a complaint "to provide each individual [defendant] with fair notice as to the basis of the claims against him or her." *Robbins*, 519 F.3d at 1249-50 (emphasis omitted); *see Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009).

In limited circumstances, materials outside a complaint may be considered under Rule 12(b)(6). *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008). One exception is for "matters of which a court may take judicial notice." *Gee*, 627 F.3d at 1186 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Plaintiff's individual-capacity action against the Commissioners necessarily depends on their personal knowledge and conduct, but Plaintiff has not pleaded facts regarding their terms of office. The Commissioners' elections and oaths of office are matters of public record. Thus, the Court takes judicial notice that former-Commissioner Calvey served from January 2019 until January 2023 (when he was replaced by Myles Davidson). Commissioner Blumert took office in January 2019, and Commissioner Maughan has been in office since January 2009.

**Plaintiff's Allegations**

Johnny was confined in OCDC as a pretrial detainee on March 15, 2021, when he suffered personal injuries as a result of inmate violence that occurred in his cell. Plaintiff alleges that unsafe conditions existed in OCDC due to underfunding of jail operations, a shortage of detention officers, and understaffing of housing pods where cells are located. "On March 15, 2021, the jail was critically understaffed." *See* Am. Compl. ¶ 37. Specifically, there was no detention officer assigned to the pod or the floor where Johnny was housed, and no officer was assigned to monitor video surveillance of Johnny's pod. *Id*. ¶¶ 39-41.

The Amended Complaint describes a series of events in which Johnny was physically threatened by his cellmate, placed a call for assistance, and reported the threat to an officer, but was severely beaten and sexually assaulted before any response was made. Plaintiff attributes the delayed response to the alleged fact that there was no direct or indirect supervision of inmates on the floor where Johnny's cell was located. Plaintiff alleges that a responding officer arrived during the assault but waited for additional officers to intervene, and that Johnny was critically injured before they entered the cell. Johnny received medical treatment at a hospital the same day. He was treated in the intensive care unit for four days and remained hospitalized until March 29, 2023. Johnny then returned to OCDC and was placed in the same pod as his attacker.

Plaintiff alleges that each of the Commissioners "has made public and private statements about the extreme lack of funding at [OCDC], and the extreme dangers at [OCDC] created by the lack of funding," and statements "admitting that [OCDC] is

6

dangerous" and "indicating their knowledge of the unconstitutional conditions related to under-staffing and under-funding at [OCDC]." *See* Am. Compl. [Doc. No. 35], ¶¶ 88-89, 93-94. Two former sheriffs have spoken to the Commissioners individually "and in open meetings about the lack of funding, and the resultant lack of staffing and the dangers that it creates for inmate-on-inmate violence." *Id*. ¶¶ 97-98.

Plaintiff states facts to show that the Commissioners were repeatedly made aware of underfunding and understaffing problems at OCDC throughout their terms in office. Pertinent allegations include that the county "has been sued multiple times over the last 15 years for inmate-on-inmate violence" and local media reports about inmate-on-inmate violence at OCDC have made it "a matter of general public knowledge." *Id*. ¶¶ 95-96. An investigation by the United States Department of Justice regarding OCDC from 2006-08 (which remains ongoing) resulted in a 2008 written report that found, among other things, "that underfunding, understaffing, and lack of appropriate supervision of inmates in the pods created unconstitutional conditions of confinement and raised the likelihood of inmate-on-inmate violence." *Id*. ¶ 106. After the 2008 report, the Board of County Commissioners created a committee to investigate OCDC and determine how to correct these issues, and "was told, by [this] committee, that [OCDC] was underfunded, understaffed, and dangerous to inmates and staff and that the risk of violence to both inmates and staff was unconstitutionally high." *Id*. ¶¶ 107-08. Also, on seven dates between July 2016 and April 2020, the Oklahoma State Department of Health inspected OCDC, found the facility was understaffed, and issued violation reports that were presented to the Commissioners. *Id*. ¶¶ 111-12.

Plaintiff states regarding funding that Oklahoma County "has created a Budget Board to review and approve the proposed budgets for each county office each year" and all elected county officials, including the Commissioners, are members of this board. *Id*. ¶ 73-74.[4] The elected officials are assisted by a team of finance and management staff in evaluating budget requests and making recommendations "as to how county monies should be spent." *Id*. ¶ 76. The members of this team annually discuss the jail budget and receive information regarding jail funding, staffing, and salaries, and they report information regarding these issues to the elected officials. *Id*. ¶¶ 77-79. The Commissioners vote to adopt the final budget and submit it to the excise board for approval. *Id*. ¶ 80.[5] From 2017 to 2020, many county offices (such as court clerk, assessor, treasurer, and court services) received double-digit increases in their budgets (between 15% and 33%), while "the budget allotted to jail services increased minimally." *Id*. ¶¶ 81-85. From 2017 to 2021, Oklahoma County "spent millions of dollars" on capital improvements (remodeling courtrooms or

---

[4] A reasonable inference from Plaintiff's allegations is that Oklahoma County has elected to utilize the procedures of the County Budget Act, Okla. Stat. tit. 19, §§ 1401-21. Prior disputes regarding Oklahoma County budget appropriations have been resolved under this Act. *See, e.g.*, *State ex rel. Macy v. Bd. of Cnty. Comm'rs*, 986 P.2d 1130 (Okla. 1999).

[5] The Oklahoma Supreme Court has stated as follows regarding the appropriation process under the County Budget Act:

> When filed with the excise board, the county budget constitutes an appropriation for each of the included items subject only to the excise board's final approval. The excise board's role at this terminal stage of the process is (a) to examine the budget for conformity to the law and (b) if the budget will pass legal muster, to certify it as approved.

*Macy*, 986 P.2d 1130, 1135-36 (footnotes omitted).

building office spaces) and infrastructure (such as new roads), instead of addressing jail safety by hiring additional personnel and improving camera surveillance. *Id*. ¶¶ 86-87.

## Discussion

A. **Plaintiff's Standing**

The Commissioners assert that Plaintiff lacks standing under Article III of the Constitution to sue them individually because he cannot meet the second element of constitutional standing. The three requirements for Article III standing are injury in fact, causation, and redressability. *Citizens for a Better Env't*, 523 U.S. at 102-04. And to satisfy the causation element, Plaintiff must show "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Id*. at 103. The Commissioners argue that none of them acting alone had the power to control the matters that allegedly led to a violation of Johnny's constitutional rights as an OCDC detainee, such as inadequate funding. Oklahoma law requires that county budget decisions must be made by a board of county commissioners (or a budget board) and must be approved by a county excise board. *See* Comm'rs Mot. at 12-14. In their view, Plaintiff cannot connect Johnny's injury to any individual action or inaction by a single county commissioner.

The Court is not persuaded by this argument, which is unsupported by any pertinent legal authority. The Commissioners draw from principles of state law regarding the authority of public officers generally and county commissioners specifically to contend they were powerless individually to effect any change in the alleged deficiencies at OCDC. The Commissioners focus on the requirement of collective action as a board to take an official act, such as deciding a budget measure. However, a similar argument could be

made any time multiple individuals act jointly to accomplish a single wrong. More importantly, however, the Court is not convinced by the Commissioners' attempt to distinguish earlier cases in which a similar effort to cast a merits-based challenge as a justiciability issue has been rejected. *See Kauble v. Bd. of Cnty. Comm'rs*, Case No. CIV-17-729-D, 2018 WL 912285, *3 (W.D. Okla. Feb. 15, 2018); *Powell v. Bd. of Cnty. Comm'rs*, Case No. CIV-18-294-D, 2019 WL 2238022, *4 (Okla. May 23, 2019); *Pendleton v. Bd. of Cnty. Comm'rs*, Case No. CIV-18-707-G, 2019 WL 4752269, *3 (W.D. Okla. Sept. 30, 2019). The Court finds that the Commissioners' defense of this action based on their scope of authority under state law is not a jurisdictional issue.

The Court therefore finds that Plaintiff has standing to sue the Commissioners in their individual capacities.

**B.     State-Law Immunity**

The Commissioners claim immunity from suit under state law because Plaintiff's *Bosh* claims are subject to the GTCA. The GTCA waives sovereign immunity from claims for damages against a political subdivision "only to the extent and in the manner prescribed in the act." *See* Okla. Stat. tit. 51, § 152.1(B); *see also Sullins v. Am. Med. Resp. of Okla., Inc.,* 23 P.3d 259 (Okla. 2001) ("In waiving sovereign immunity, the Legislature restricted the waiver only to the extent and in the manner prescribed in the act."). The GTCA prohibits suits against public employees, including elected officials, acting within the scope of their employment. *See* Okla. Stat. tit. 51, § 163(C). Plaintiff makes no response to the Commissioners' argument that Plaintiff's action against them is barred by this provision. Further, the Court has previously ruled on a similar motion to dismiss filed by another

individual defendant in this case, Sheriff Tommie Johnson, III. *See* 9/19/23 Order [Doc. No. 91]. The Court found that, assuming a viable *Bosh* claim exists, Plaintiff cannot fashion a claim against an individual official that is not barred by the GTCA under the alleged facts of this case. *Id*. at 12-13. Plaintiff's response to the Commissioners' Motion does not alter this conclusion. Therefore, the Court finds that the Commissioners are entitled to a dismissal without prejudice of Plaintiff's state-law claims.[6]

## C. Absolute Immunity Under § 1983

The Commissioners assert a defense of absolute legislative immunity to Plaintiff's § 1983 action against them. The Supreme Court first recognized this defense in *Tenney v. Brandhove*, 341 U.S. 367 (1951), which "held that § 1983 did not abrogate the long-established absolute immunity enjoyed by legislators for actions taken within the legitimate sphere of legislative authority." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). The Supreme Court has adopted a "functional approach" to identifying governmental functions that merit absolute immunity "to ensure that they are performed with independence and without fear of consequences." *Id*. at 363 (internal quotations omitted).

Consistent with this approach, the Supreme Court has "recognized that officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official

---

[6] Because immunity from suit is a jurisdictional defense under state law, the dismissal must be without prejudice to refiling. *See Brereton v. Bountiful City Corp*., 434 F.3d 1213, 1218 (10th Cir. 2006).

11

performing it." *Id*. at 54. In *Bogan*, the Court held that municipal officials (a city councilman and a mayor) were immune from suit on § 1983 claims based on their legislative acts of introducing, voting for, and enacting a budget ordinance that eliminated the plaintiff's employment position. *See id*. at 55. The ordinance "bore all the hallmarks of traditional legislation" in that it "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *Id*. at 55-56.

Utilizing this functional approach, the Tenth Circuit has held that state officers and agency officials enjoy legislative immunity from prisoner suits that claim they failed to increase funding or enact laws to improve prison conditions. *See Savage v. Fallin*, 845 F. App'x 772, 778-79 (10th Cir. 2021) (unpublished); *Burnett v. Fallin*, 785 F. App'x 546, 550 (10th Cir. 2019) (unpublished).[7] Other federal appellate courts agree. *See Jones v. Allison*, 9 F.4th 1136, 1141-42 (9th Cir. 2021) (department of corrections officials were performing legislative function when they adopted authorized regulations and were entitled to legislative immunity from § 1983 claims of persons adversely affected by them).

Upon examination of Plaintiff's pleading in this case, it appears his § 1983 claims against the Commissioners individually are based solely on their actions or inactions regarding budget appropriations. The allegations of the Amended Complaint focus on the Commissioners' duty to provide sufficient funding for jail operations. *See* Am. Compl. ¶¶ 66-72. Plaintiff also alleges that the Commissioners, acting as members of the Board of

---

[7] Unpublished opinions are cited in this Order pursuant to Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

12

County Commissioners, had the authority to earmark appropriated funds to specific areas of jail operations. *Id*. ¶ 122. The Commissioners' funding choices are also the focus of Plaintiff's brief opposing their Motion. *See* Pl.'s Resp. Br. at 14-16. The Court has been unable to identify any action or inaction by the Commissioners other than appropriations or earmarks of funds for jail operations that might underlie Plaintiff's § 1983 action against them in their individual capacities.

The Commissioners seek the protection of legislative immunity because Plaintiff's claims against them individually are based on their conduct in proposing and approving budgets that allegedly failed to address unconstitutional conditions at OCDC. These acts are quintessentially legislative functions. Plaintiff makes no response in his brief to the Commissioners' assertion of this defense. *See* Pl.'s Resp. Br. at 22. The Court therefore finds that Plaintiff's § 1983 claims against the Commissioners in their individual capacities are barred by legislative immunity and must be dismissed.

## Conclusion

For these reasons, the Court finds that the Commissioners have shown that Plaintiff's individual-capacity suit against them under federal and state law is barred by their respective immunities from suit.

**IT IS THEREFORE ORDERED** that the Renewed Motion to Dismiss of Defendants Carrie Blumert, Kevin Calvey, and Brian Maughan [Doc. No. 42] is

**GRANTED**. Plaintiff's action against Defendants Kevin Calvey, Carrie Blumert, and Brian Maughan is **DISMISSED** without prejudice.[8]

**IT IS SO ORDERED** this 22nd day of September, 2023.

TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[8] To the extent any deficiency in Plaintiff's pleading could be cured by further amendment, a deadline for motions to amend pleadings will be set in a scheduling order entered under Fed. R. Civ. P. 16(b).