IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BILLY JOE ALTSTATT, as brother and Guardian of JOHNNY ALTSTATT, an incapacitated person,<br><br>        Plaintiff,<br><br>v.<br><br>BOARD OF COUNTY COMMISSIONERS FOR OKLAHOMA COUNTY; *et al.*,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. CIV-22-811-D<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER REGARDING TRUSTEES' MOTION TO DISMISS

Before the Court is the Motion to Dismiss of Defendants Sue Ann Arnall, Joe Allbaugh, Francie Ekwerekwu, Todd Lamb, Jim Couch, Ben Brown, and M.T. Berry [Doc. No. 59] under Fed. R. Civ. P. 12(b)(1) and (b)(6). The movants are individuals who were trustees of the Oklahoma County Criminal Justice Authority in 2021 when the underlying events of this case occurred (the "Trustees"). The Trustees seek the dismissal of Plaintiff's action on the grounds that he has failed to state a claim against them under 42 U.S.C. § 1983; that his state-law claims are barred by the Governmental Tort Claims Act ("GTCA"), Okla. Stat. tit. 51, §§ 151-72; and that they have qualified immunity from suit under § 1983. Plaintiff has filed a timely Response [Doc. No. 76], and the Motion is fully briefed.[1]

---

[1] No reply brief was filed within the time permitted by LCvR7.1(i).

## Factual and Procedural Background

Plaintiff Billy Joe Altstatt brings this action on behalf of his ward, Johnny Altstatt ("Johnny"), for alleged violations of Johnny's federal and state constitutional rights. Plaintiff asserts claims for damages under § 1983 and *Bosh v. Cherokee County Building Authority*, 305 P.3d 994 (Okla. 2013), for personal injuries that Johnny suffered on March 15, 2021, during his confinement in the Oklahoma County Detention Center ("OCDC") or jail. Plaintiff has sued fifteen defendants, including the Board of County Commissioners of Oklahoma County and the Oklahoma County Jail Trust, the proper name of which is Oklahoma County Criminal Justice Authority ("OOCJA"). Plaintiff appears to be suing the Trustees in their individual capacities for their personal involvement in allegedly failing to cure alleged constitutional deficiencies in the operation of OCDC.[2]

Plaintiff is proceeding under the Amended Complaint [Doc. No. 35], which frames alternative theories of liability as seven claims. Three § 1983 claims allege deprivations of Johnny's right to due process under the Fourteenth Amendment: Claim 1, "Failure to Protect," alleging a violation of a "right to bodily integrity to be free from inmate-on-inmate violence" (Am. Compl. ¶ 137); Claim 3, "Inadequate Supervision," alleging a violation of a "right to adequate supervision . . . to prevent inmate-on-inmate violence" (*id.*

---

[2] In the caption of his pleadings, Plaintiff identifies each trustee as a defendant "in his [or her] individual capacity and as a member of the Oklahoma County Jail Trust." Plaintiff does not state in the allegations of his pleadings the capacity in which the Trustees are sued. The Trustees move for dismissal in their individual capacities. *See* Trustees' Mot. at 1. To the extent Plaintiff intended also to sue the Trustees in their official capacities, the Court finds an official-capacity suit is duplicative and unnecessary. *See* 9/19/23 Order [Doc. No. 91] at 7-10 (dismissing official-capacity action against the sheriff).

¶ 144); and Claim 5, "Conditions of Confinement," alleging a violation of a "right to conditions of confinement that satisfy basic constitutional requirements for housing pretrial detainees," including a "right to be free from injury." *Id*. ¶ 148.  Three *Bosh* claims allege deprivations of Johnny's right to due process under article 2, section 7 of the Oklahoma Constitution using these same labels and allegations.  *See id*. Claim 2, ¶ 141; Claim 4, ¶ 146; Claim 6, ¶ 150.  A seventh claim entitled "Individual Claims" appears to restate that each individual defendant is liable under § 1983 for his or her part in any constitutional violation.  *Id*. ¶¶ 152-55.

Plaintiff amended his pleading on January 11, 2023, and the Trustees filed the instant Motion in response to the Amended Complaint.  As previously stated, the Trustees challenge the sufficiency of the Amended Complaint to state a § 1983 claim against them individually and assert the defense of qualified immunity.  They move for dismissal of the *Bosh* claims on a jurisdictional ground, that is, the claims are barred by statutory immunity under the GTCA.[3]

**Standards of Decision**

A.   **Rule 12(b)(1) – Subject Matter Jurisdiction**

"Motions to dismiss for lack of subject matter jurisdiction generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based."  *City of Albuquerque v. U.S. Dept. of Interior*, 379 F. 3d 901, 906

---

[3] Oklahoma law treats immunity from suit under GTCA as a jurisdictional matter. *See Chambers v. City of Ada*, 894 P.2d 1068, 1074 (Okla. 1995).

(10th Cir. 2004) (internal quotation omitted). If the motion challenges only the sufficiency of the jurisdictional allegations in the complaint, the Court confines its review to the pleadings and accepts the allegations in the complaint as true. *See Peterson v. Martinez*, 707 F.3d 1197, 1205-06 (10th Cir. 2013); *Holt v. United States*, 46 F. 3d 1000, 1002 (10th Cir. 1995). In this case, the Trustees raise only a pleading-based jurisdictional issue, and the Court relies for its ruling on the facts stated by Plaintiff.

**B.     Rule 12(b)(6) – Failure to State a Claim**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating a complaint, the Court first disregards conclusory allegations and "next consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679; *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1248 (10th Cir. 2008). In § 1983 cases, it is particularly important for a complaint "to provide each individual [defendant] with fair notice as to the basis of the claims against him or her." *Robbins*, 519 F.3d at 1249-50 (emphasis omitted); *see Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009).

Where a defendant asserts qualified immunity, the plaintiff must allege sufficient facts to overcome this defense. "The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Wood v. Moss*, 572 U.S. 744, 757 (2014) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011)). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Stewart v. Beach*, 701 F.3d 1322, 1331 (10th Cir. 2012) (internal quotation omitted).

In limited circumstances, materials outside a complaint may be considered under Rule 12(b)(6). *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008). The Court has already decided other Rule 12(b)(6) motions, including one filed by OCCJA that relied on its status as a public trust created under Okla. Stat. tit. 60, § 176. The Court determined that a copy of the trust indenture that was submitted by Defendant Board of County Commissioners of Oklahoma County [Doc. No. 41-1] could properly be considered under Rule 12(b)(6). *See* Order re. Mot. Dismiss Okla. Cnty. [Doc. No. 91] at 4-5; Order re. Mot Dismiss OCCJA [Doc. No. 92] at 4-5. Plaintiff states in response to the Trustees' Motion facts shown by the trust indenture that are not included in his pleading, namely, that OCCJA was created in 2019 for the purpose of operating and managing OCDC. *See* Pl.'s Resp. Br. at 1. Thus, the Court again elects to consider this material in ruling on the Trustees' Motion.

**Plaintiff's Allegations**

Johnny was confined in OCDC as a pretrial detainee on March 15, 2021, when he suffered personal injuries as a result of inmate violence that occurred in his cell. Plaintiff alleges that unsafe conditions existed in OCDC due to underfunding of jail operations, a shortage of detention officers, and understaffing of housing pods where cells are located. "On March 15, 2021, the jail was critically understaffed." *See* Am. Compl. ¶ 37. Specifically, there was no detention officer assigned to the pod or the floor where Johnny was housed, and no officer was assigned to monitor video surveillance of Johnny's pod. *Id*. ¶¶ 39-41.

The Amended Complaint describes a series of events in which Johnny was physically threatened by his cellmate, placed a call for assistance, and reported the threat to an officer, but was severely beaten and sexually assaulted before any response was made. Plaintiff attributes the delayed response to the alleged fact that there was no direct or indirect supervision of inmates on the floor where Johnny's cell was located. Plaintiff alleges that a responding officer arrived during the assault but waited for additional officers to intervene, and that Johnny was critically injured before they entered the cell. Johnny received medical treatment at a hospital the same day. He was treated in the intensive care unit for four days and remained hospitalized until March 29, 2023. Johnny then returned to OCDC and was placed in the same pod as his attacker.

The Amended Complaint does not allege facts regarding any individual trustee other than stating that each was acting under color of law at all material times. *See id*. ¶¶ 13-19. Instead, Plaintiff refers to the Trustees collectively as a group. He states they "have each

6

made public and private statements admitting their knowledge of the dangers created to inmates caused by underfunding and understaffing" at OCDC and, at some point, they provided notice to the county commissioners about these dangers. *Id*. ¶¶ 90-91, 99. Plaintiff also states that local media reports about inmate-on-inmate violence at OCDC have made the problem "a matter of general public knowledge" at some unspecified time. *Id*. ¶ 96.[4]

The Amended Complaint contains a lengthy recitation of historical facts concerning past investigations and reports of alleged deficiencies at OCDC related to underfunding, understaffing, and lack of inmate supervision. However, the only factual allegations that may show the Trustees were aware of these deficiencies are based on an investigation by Ryan Correctional Services, which was hired by the administrator of OCDC in February 2021 to inspect OCDC "and to provide insight into how to improve conditions." *Id*. ¶ 114. Ryan Correctional Services provided a report of findings "that the present level of staffing was insufficient for a safe and secure jail," that it was "impossible to effectively manage the inmate population when [the jail is] so short staffed," and that the jail staff "expressed significant concerns" about a lack of safety. Id. ¶¶ 115, 119-20. At some point, the Trustees were informed of these findings and discussed them in open meetings. Id. ¶ 121.[5]

---

[4] The Court notes that Defendant Joe Allbaugh was not originally named as a trustee. *See* Trust Indenture [Doc. No. 41-1] at 1. It is unclear when he was appointed.

[5] Plaintiff relies in his brief on facts stated in the Amended Complaint about inspections conducted by the Oklahoma State Department of Health that found staffing deficiencies, two of which occurred "during the OCCJA's tenure." *See* Pl.'s Resp. Br. at 2-3. However, the Amended Complaint does not allege that these reports were provided to the Trustees. *See* Am. Compl. ¶ 112. Plaintiff also makes arguments based on factual matters outside the Amended Complaint that are disregarded. *See* Pl.'s Resp. Br. at 9-10.

**Discussion**

A.  **State-Law Immunity**

The Trustees claim immunity from suit under state law because Plaintiff's *Bosh* claims are subject to the GTCA. The GTCA waives sovereign immunity from claims for damages against a political subdivision "only to the extent and in the manner prescribed in the act," which includes a list of enumerated exceptions. *See* Okla. Stat. tit. 51, §§ 152.1(B), 155; *see also Sullins v. Am. Med. Resp. of Okla., Inc.,* 23 P.3d 259 (Okla. 2001) ("In waiving sovereign immunity, the Legislature restricted the waiver only to the extent and in the manner prescribed in the act."). Consistent with OCCJA's position in its motion, the Trustees invoke a statutory exception that preserves sovereign immunity for claims resulting from the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility." *Id.* § 155(25); *see* Trustees' Mot. at 8-9.

The Court has previously ruled on prior motions in this case that the jail-operations exception of § 155(25) applies to Plaintiff's *Bosh* claims and bars him from pursuing these claims. *See* Order re. Mot. Dismiss Okla. Cnty. at 13; Order re. Mot Dismiss OCCJA at 8. The Court has also ruled that, assuming a viable *Bosh* claim exists, Plaintiff cannot fashion a claim against an individual official that is not barred by the GTCA under the alleged facts of this case. *See* Order re. Mot. Dismiss Okla. Cnty. at 12-13. Plaintiff makes no argument in response to the Trustees' Motion that would alter this conclusion. Thus, the Trustees are entitled to a dismissal without prejudice of Plaintiff's state-law claims.[6]

---

[6] Because immunity from suit is a jurisdictional defense under state law, the dismissal must be without prejudice to refiling. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218

**B.     Failure to State a § 1983 Claim**

The Trustees first assert that the Amended Complaint fails to allege sufficient facts to show that Johnny's constitutional right of protection from inmate violence or right to humane conditions of confinement was violated. The Court has previously rejected these same arguments in ruling on OCCJA's motion to dismiss. *See* 9/20/23 Order at 9-13. Unlike Plaintiff's § 1983 action against OCCJA, however, his claims against the Trustees are not based on municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). To show the individual liability of the Trustees, Plaintiff must show their direct participation in a constitutional violation, or a basis for supervisory liability. *See Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010).

The Amended Complaint does not contain any factual allegations from which to infer that the Trustees directly participated in a constitutional violation. Plaintiff instead argues in his brief a theory of supervisory liability. *See* Pl.'s Resp. Br. at 7-8. Under this theory, Plaintiff "must show an 'affirmative link' between the supervisor and the constitutional violation." *Burke*, 935 F.3d at 997 (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014)). To establish this link, "the supervisor [must] have 'promulgated, created, implemented, or possessed responsibility for the continued operation of a policy' that resulted in a violation of [Johnny's] constitutional rights." *Id.* at 998 (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)). Plaintiff must also show "a causal relationship between the policy or custom and the underlying

---

(10th Cir. 2006). Considering this disposition, the Court does not reach an additional issue raised by the Trustees regarding Plaintiff's *Bosh* claims. *See* Trustees' Mot. at 9.

9

violation" and "deliberate indifference." *Id*. at 999.  "[A] local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Id*. at 997-98 (internal quotation omitted).

Upon consideration of Plaintiff's pleading and the arguments presented in his brief, the Court is unable to identify what policymaking role the Trustees allegedly played in the constitutional deficiencies at OCDC of which Plaintiff complains.  Assuming the Trustees' authority included establishing policies regarding funding, staffing, or inmate supervision, however, the Court finds insufficient factual allegations to show the Trustees' deliberate indifference to an obvious risk of injury from inmate-on-inmate violence.  Plaintiff relies on "OCCJA's knowledge or inference of knowledge" of inmate violence at OCDC from the facts that the problem "was longstanding, pervasive, well-documented, and expressly noted by prison officials in the past" and that "OCCJA failed to correct" the problem "[a]fter being repeatedly warned."  *See* Pl.'s Resp. Br. at 8.

As to the Trustees, however, the Amended Complaint contains only conclusory allegations (which are insufficient), other than facts regarding an investigation by Ryan Correctional Services.  Although Ryan Correctional Services allegedly provided a report to the Trustees that a staffing shortage or inadequate staffing at OCDC raised safety concerns, the Amended Complaint does not state when the Trustees received this report. Given that Ryan Correctional Services was not hired until February 2021, it is unclear whether a report was delivered before Johnny's injury in March 2021.  More importantly,

it is unclear whether the report provided notice of the existence of an unconstitutional level of risk to inmate safety. One cannot reasonably infer from the bare facts alleged in the Amended Complaint that the Trustees were deliberately indifferent to an obvious risk of serious harm to OCDC inmates.

Therefore, the Court finds that Plaintiff has failed to provide sufficient factual allegations to state a plausible § 1983 claim against the Trustees in their individual capacities.

## C.  Qualified Immunity Under § 1983

The Trustees' assertion of the defense of qualified immunity places the burden on Plaintiff to demonstrate not only that their conduct violated Johnny's constitutional rights, but that those rights were clearly established in March 2021. "A right can be clearly established through a factually similar 'Supreme Court or published Tenth Circuit decision,' or through 'the clearly established weight of authority from other courts.'" *Brown v. Flowers*, 974 F.3d 1178, 1184 (10th Cir. 2020) (quoting *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018)). "[A] case directly on point" is not required, but the right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (per curiam) (internal quotation omitted); *accord District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."). The Supreme Court has expressly cautioned:

11

> We have repeatedly told courts not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of particular conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

*Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotations, citations, and emphasis omitted).

In response to the Trustees' qualified immunity argument, Plaintiff argues in full as follows: "The right to protection from harm from other inmates has been 'clearly established' for decades. *See Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970 (1994)." *See* Pl.'s Reply Br. at 15. This degree of generality is insufficient to satisfy Plaintiff's burden. Plaintiff has not identified any legal authority that clearly established an inmate's constitutional right to safety through adequate levels of funding, staffing, and inmate supervision. Nor has Plaintiff identified precedent that would have made it clear to every reasonable person in the Trustees' positions that their alleged conduct violated the constitutional rights asserted.

Therefore, the Trustees are entitled to qualified immunity on Plaintiff's § 1983 claims against them in their individual capacities.

## Conclusion

For these reasons, the Court finds that Plaintiff's action against the Trustees under state law is barred by their immunity under the GTCA, and that the Amended Complaint fails to state a plausible § 1983 claim against them or overcome their defense of qualified immunity.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss of Defendants Sue Ann Arnall, Joe Allbaugh, Francie Ekwerekwu, Todd Lamb, Jim Couch, Ben Brown, and M.T. Berry [Doc. No. 59] is **GRANTED**. Plaintiff's action against these defendants is **DISMISSED** without prejudice.[7]

**IT IS SO ORDERED** this 25th day of September, 2023.

TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[7] To the extent a deficiency in Plaintiff's pleading could be cured by further amendment, a deadline for motions to amend pleadings will be set in a scheduling order entered under Fed. R. Civ. P. 16(b).